Good afternoon, your honors. My name is Maxine Wexler, and I'm representing Mr. Kopy. Good morning. Good morning. Didn't we see you the other day? Where? Oh, maybe not. There's somebody else. Yeah. Good morning. No, it wasn't me. I haven't been here before. All right. Well, welcome. Thank you. There are five issues here, and I was wondering if you wanted me to focus more particularly on one than another. Sure. Go ahead. Okay. I believe that the biggest error here is the instructional error and the prosecutor's misinterpretation of the heat of passion instruction. This case, if ever I have seen one, is crying out manslaughter. This was a man who had a normal life, was married for 38 years, never heard a fly, discovers that he believes that his wife is beginning an affair, and he begins to feel jealousy, which over a period of several – it starts maybe a month before, so over a period of several weeks, he finds more information that kind of convinces him that this is happening, and he becomes very, very jealous, enraged, to the point that he feels that he has to confront the wife and her boss, who he presumes is her lover. So he is completely filled with this rage and jealousy to the point that he goes to the workplace, not a rational man, and it's obvious that he's not a rational man, and that is the issue here, that his anger and his jealousy so consumed him that he walked through the hallways screaming for everybody to hear, not a rational man, that he's going to – where is the boss, and I want to find him, and you've been effing my wife, and I'm going to kill you, and blah, blah, blah, and he goes into the office, and he's there to confront him. He's got tapes. He's got proof, and he wants to confront him with this proof and have him fess up and maybe lose his job. He's not intending to kill him necessarily, no. He's very jealous. I don't think he knows exactly what he's doing, and the boss tries to calm him down and then accuses him of not servicing his wife, which set him off even more so. So that was the culminating fact that caused him to pretty much lose it. The boss throws a chair at him. I believe he – I don't – he claims that he didn't know what happened after that, that the gun went off. He knows he did it, but it was – it shot, and the boss was killed, and those are the facts showing manslaughter. Now, his whole argument was that this heat of passion of his had been building over these weeks and months to the point – like two days before when he found out his wife was about to meet the lover, and then the lover was going to take his son, his only son, to a soccer game and alienate his affection even further. So he builds up to the point of actually going to the place of business. But – so the whole argument was that this was a slow-building heat of passion defense. This was not premeditated. The man was consumed by this rage, that he needed clear instruction. He needed the jury to be instructed that heat of passion can develop over time, and that is California law. Instead, the instructions read that you are not entitled to a manslaughter instruction if the heat of passion was sudden, sudden heat of passion, or – it was basically, you know, the instruction came out sudden heat of passion, and he needed an explanation that heat of passion could build over time. I read sudden quarrel, or – literally it reads, just the relevant sentence, there is no malice afterthought if the killing occurred upon a sudden quarrel or heat of passion. Then if you get – the trial court judge gave Calgic 8.42, which in the – I think in the last sentence of the second paragraph, specifically says, legally adequate provocation may occur in a short or over a considerable period of time. The other problem is that you've got – there are different instructions. Calgic number 8.20, for instance, provides that – so it must have been formed upon preexisting reflection, this is for premeditation, and not under a sudden heat of passion. So they do define sudden heat of passion. And a normal jury who are not grammarians is not going to necessarily understand that that sudden modifies only quarrel and not heat of passion, not when the prosecutor is telling them you cannot have sudden heat of passion in a murder case. What did the instructions say? Well, one instruction, Calgic number 8.20, specifically says, if you find that the killing was preceded and accompanied by deliberate intent, which was the result of deliberation premeditation, so that it must have been formed under preexisting reflection and not under a sudden heat of passion, then that's murder in the first degree. And then Calgic 8.40 says, every person who unlawfully kills another human being without malice is guilty of voluntary manslaughter. There is no malice if the killing occurred under a sudden quarrel or heat of passion. Sudden quarrel or heat of passion. You're not attacking the instruction, per se, are you? I am attacking the instruction, but I'm attacking the charge to the jury as a whole, which includes the prosecutor's explanation of this instruction. And the prosecutor basically says – The prosecutor doesn't charge the jury. He can stand up there and make his own argument. He gave so many explanations of this that the jury relies upon – Didn't the court also instruct you shall not – the argument is not instruction? You'll abide by the instructions? Yeah, but the instructions are conflicting here because you've got a sudden heat of passion, you've got a sudden quarrel or heat of passion. I don't know that the jury – and then you've got the prosecutor not contradicting it. It doesn't seem like he's contradicting anything. It sounds like he's explaining what the instruction means. He says, look at the top. It says sudden quarrel or heat of passion. That's why there is no sudden heat of passion in a murder case. Ms. Wexler, I think I – maybe all of us would agree with you that the prosecutor's argument was wrong on heat of passion and that instruction 8.20 is inconsistent with the others. But that isn't really what we're here to decide, is it? We're here to decide whether all of these instructions taken as a whole, including the instruction that the jury was to follow the instructions and not the prosecutor's argument, whether the court of appeals decision that that wasn't a sufficient denial of due process to set aside the case is objectively unreasonable. Isn't that what we're here to decide? Right, and I believe it is objectively unreasonable because I believe that they artificially isolated the instruction that they wanted to reach their decision. They didn't look at how the charge to the jury as a whole, not just these written instructions, but the charge to the jury according to Cutt v. Naughton includes the prosecutor's argument explaining the instructions. He was not contradicting the instructions, so they couldn't ignore him. I mean, they can say what the prosecutor says is not evidence. This isn't evidence. This is argument, and the charge to the jury includes argument under Cutt v. Naughton. And here the prosecutor is absolutely telling them there is no slow-building heat of passion defense. Look at the instruction that says sudden heat of passion. Well, but the jury instruction that they isolated, to use your word, is the instruction that defined heat of passion for the jury, right? It defines a sudden quarrel or heat of passion. But it is the definition. The court gave the jury a definition of heat of passion. It was in 8.42. And that's the instruction that the court of appeals said accurately informed the jury of the law. And then the court said, follow the instructions, not the prosecutor. Was it unreasonable for the court of appeals to say that's cured the error in the prosecutor's argument below? Yes, it was unreasonable because the instruction was confusing, especially when you couple it with how the prosecutor explained it. Because in 8.42 where it says to reduce an unlawful killing on the ground of sudden quarrel or heat of passion, the provocation must be of the character and degree as naturally would excite and arouse the passion. And the assailant must act under the influence of that sudden quarrel or heat of passion. Sudden quarrel. Now what's interesting is that in later cases when you have this, like Princess Lascaux. Lascaux specifically talks about when they're distinguishing between manslaughter and murder. And it says when the act causing the death is done in the heat of passion or is excited by a sudden quarrel such as amounts to adequate provocation. I mean, it's totally separated so that you know that heat of passion is an all-encompassing concept. It occurs slowly over time. And in this case, let's say maybe the instructions by themselves if you didn't have this particular case might be okay. But you have this case where the entire defense is a slow-building heat of passion over these months. And the prosecutor is saying no sudden quarrel or heat of passion means no sudden heat of passion here. This is not the defense. If slow-building passion is premeditation, there's no such thing as a slow-building. And so if this case can isolate the fact that heat of passion is a separate entity from quarrel, then that explains it. Then this instruction would have been okay. But as is, as given, and as explained, the overall charge was denied Mr. Kobe his defense of slow-building heat of passion. That was his only defense, and he's denied it by the prosecutor saying all these things about it. Number one, that instruction alone. But number two, everything else that he said that anger is malice. Anger is not malice, not in the homicide definition of malice. Malice, you know, is anger means something else. Anger means you're pretty much, as I defined it here, it's an all-consuming passion. An all-consuming passion is not the malice that we charge people with with murder. Ms. Wexler, you are not arguing in this case that the trial court's definition of malice was incorrect, are you? No, but I'm arguing that the prosecutor's misconduct also contributed to this unfair trial and the denial of due process because maybe the instructions by themselves in the abstract would have been fine, but when you try to relate them to this particular case where the entire defense is slow-building heat of passion, then these instructions which are confusing, at least they're confusing. And I don't think that just by reading them again or, you know, assuming that Sutton modifies only plural and not heat of passion is going to cure the confusion to the jury, especially, as I said, when the prosecutor keeps reminding the jury that there's no slow-building heat of passion, that's premeditation, that anger means malice, that he's angry and this is only premeditation, and then he goes ahead. I mean, the prosecutor totally destroyed his defense. And even assuming that the instructions in the abstract are correct,  under the law of murder here in Mr. Copey's case, it's a total denial of due process. And it so infused the trial with unfairness as to have violated it. It was so unfair because everything that the prosecutor said, I want to just go to some of these arguments here. Here he says, defining anger as malice. When he says passion, what he's basically saying, this is the prosecutor telling the jury, jury, what he's basically saying is that he's angry. And when he says he's angry, that falls into the definition of malice of forethought under the definition. Anger that causes a person to do something, if you will, inherently dangerous to human life. But that's a distortion because, you know, the dictionary definition of anger is, you know, is unreason. You know, it's a passion that removes reason. And rage is something that almost verges on madness. So you can't say that anger and malice are synonymous. They're not. The definition of malice for murder is totally, totally different. It goes to the – where is it exactly? I have it in here. Give me a minute. But we'll – Did you want to save some time for rebuttal? Yes. All right. Should I do that now? You probably should do that now. You can regroup. I'll regroup. Thank you. I'm sorry. I didn't know where you were going to go, so I didn't know where to exactly have my clothes. But we'll try another question. Good morning, Your Honors. Deputy Attorney General Timothy Weiner. I'd like to start – there's one thing I'd like to make clear here that I think that the counsel didn't make real clear. When she's talking about the jury instructions that said sudden hate of passion, that was CALJIG 8.20. That was the murder instruction. And there's no question here that that was a correct instructional – there's no question here that all the instructions were correct. As a matter of fact, the California Court of Appeals specifically found that the instructions that were provided to the jury were correct statements. Of California law. Of California law. And, of course, this court and the district court sitting in habeas are bound by that determination, as the state court is the ultimate arbiter of state law. So is it your position that 8.20 is correct when it says it has to be sudden hate of passion? The entire instruction doesn't say that, Your Honor. The way its word is, it says sudden – I have it right here. Sudden hate of passion or other condition precluding the idea of deliberation. So slow hate of passion is in the other condition. Those instructions, that's CALJIG 8.40 and 8.42 specifically, that address manslaughter, which is what we were discussing, specifically say that legally apt for provocation can build over a slow or considerable period of time. And those instructions were provided to the jury, and those instructions were correct. So I would agree with you, Judge Campbell, that some of the statements made by the prosecutor were confusing. They were inartful and – Well, and they were just wrong, as a matter of law. They were, in fact, wrong. That's certainly true. At one point, I believe the prosecutor had said that if there was an intent to kill, it precludes a manslaughter finding. And that's just wrong. We accept that. However, the jury was provided with an instruction that said that if anything the attorneys say in argument conflicts with the law that I, the court, give you, jury, you must disregard what the attorneys said. And we presume the jury followed that instruction. Indeed, there's no evidence that they did not follow that instruction. Does that instruction cure any error that a prosecutor makes during a closing argument? It certainly cures the error that was made in this case. I mean, I certainly could foresee something that was so egregious that that instruction wouldn't cure it. I assume that would also draw an objection. Where's that line? I'm sorry? Where's the line between something so egregious that the instruction doesn't correct it and something that the instruction corrects? I don't know if there's a bright line. You know, that's why we have to look at the entire instruction set taken as a whole. And that's why it's so important to make that differentiation between CALJIG 8.20, which is the murder instruction, and CALJIG 8.40, which is the manslaughter instruction, and then 4.2, which specifically defines a heat of passion. Essentially what ---- During the course of jury deliberations, they did not come back to the court asking for a resolution of difference on any issue, did they? I believe that's correct. They did not ask any specific questions about that. That's correct, Judge Riesner. And then counsel also had made several statements that the jury needed clear instructions and, you know, the instructions were confusing. Well, in order for a court sitting in habeas to grant relief, the instructions would have ---- You know, there's three things the instructions need to do, right? The instructions need to fairly and adequately cover the issues presented, and they did. They need to correctly state the law, and we know they did that because the California Court of Appeals already determined that. And they did not be misleading. And I think that counsel's argument is on the third prong, is that the instructions were misleading. And, of course, what's ---- the argument is essentially ---- They can't deprive the defendant of his central defense. That's exactly correct. I gather what we're hearing is his only real substantial defense was slow building to the passion. That is correct. And, again, the jury was specifically instruction ---- instructed, rather, that the provocation could, you know, take place over a considerable period of time. I'd also like to, you know, bring to the Court's attention, this is subject to harmless error analysis. And even if you were to accept the fact that the instructions were misleading, they have to have a substantial and injurious effect on the jury's verdict. And here, the evidence was so ---- I mean, the district court called it overwhelming. I mean, a month before the shooting, Petitioner announced his anger was so high, it could kill this person. I think he said, I'm so angry it could kill. You know, he brought a gun with him. That was a statement he made to his daughter? That's correct. Couldn't that be viewed as consistent with a slow building heat of passion? It certainly could be consistent with that. But it also could be consistent with, you know, cold, calculated planning. I mean ---- Does that make the evidence overwhelming if it can be consistent with either? Well, according to the district court and the court of appeal, yes, Your Honor, it does. But you have to take it in context of everything else that the Petitioner did. He armed himself. You know, he brought a gun with him. And on the stand, when they asked why he did that, he said it because he wanted to make sure he meant business. You know, I'm here to carry out my plan. I mean business. You know, he got to the building and he called from a pay phone to make sure that the victim was in the office. You know, these are not the acts of somebody who is acting in an uncontrollable rage. You know, he concealed the weapon. He didn't go in waving the gun around, acting like a crazy person. He concealed the weapon, right? He asked the receptionist to call his wife. When she passed through a security door, he immediately moved to block her ability to shut that door. You know, he announced his intention to kill the victim here. So taken as a whole, there is certainly overwhelming evidence that this error, if it exists at all, was harmless. And I'm certainly happy to answer any other questions the court may have on this. Would you address briefly the prosecutor's cross-examination of the defendant where he repeatedly asked the defendant to comment on the credibility of other witnesses? Of course. That would be Linda Simone, I think, was the witness that he had asked. There were two questions that the district court found that were arguably improper. At one point, he had asked, why did Ms. Simone under oath deliberately make a statement? And he also said, would you believe she either did not observe that or testify untruthfully? Under state law, those are proper questions. And so there's no misconduct. If the prosecutor is acting in accordance with state law, he cannot be acting in a way that rises to the level of prosecutorial misconduct. At the time of the trial, this case hadn't been decided, but the California Supreme Court has since ruled that there's no reason to categorically exclude such questions. Now, I certainly understand under the law of the circuit, that type of question would be inappropriate. But we're dealing with clearly established law by the United States Supreme Court. That's correct. At the time of the trial. There was clearly established law from the United States Supreme Court. So the California Court of Appeals decision couldn't have been objectively unreasonable because there was no such law. And I don't believe there is such law today, as a matter of fact. I don't think the United States Supreme Court had actually ruled on that issue. So the most we've heard on that is from the district court. And they said they were arguably improper, but they immediately said there was no prejudice. And the reason there's no prejudice on that was because the – But second of all, you know, there was substantial evidence supporting the conviction for the assault, which is what those questions were targeted at, was the assault with a firearm on Martha Copey. Okay. Thank you. Thank you very much, Your Honor. That's fine. Well, my definition is – this one, he's equating anger with malice. He says – You're talking about the prosecutor. The prosecutor. I'm sorry. Okay. The legal definition of malice for murder is of an intentional act either to kill a human being, express malice, or to do an act, the natural consequences of which are dangerous to human life, and with conscious disregard for human life. That's implied malice. It's not anger. And it's not equated with anger. Anger can be construed as passion void of reason. The dictionary definition of rage suggests a violent outburst of anger in which self-control is lost, and fury implies a frenzied rage that borders on madness. This is the condition that Mr. Copey was in. It was an emotional state. He was very angry and upset. And this is the issue. Was it premeditation? Did he plan it carefully, calmly? Or was he acting in a heat of passion? And this is where the jury had to be able to be properly instructed on his defense. Yes, there was overwhelming evidence that he could have been planning this. There was also overwhelming evidence that he was in a heat of passion. But the jury never got to determine that because they weren't properly instructed on it because they were told there was no such thing as a slow-building heat of passion. There was this whole buildup of anger here. His anger was just growing and growing to rage. Ms. Wexler, didn't his attorney, didn't Mr. Copey's attorney, argue to the jury that this was a slow-building heat of passion? He did try, but then the prosecutor said, no, no, no, that's not a defense. And so at that point, that's why I argue that he was ineffective. At that point he had to say, wait a minute, California law says that, yes, you can have this slow-building heat of passion. And I don't think the jury was equipped to understand what, you know, that provocation, the difference between provocation and sudden heat of passion. Because the whole idea is that there can be provocative acts that occur over a period of time, but that doesn't mean that your heat of passion isn't brewing during those acts. So you can't separate the two. And they did here. They said that, in other words, if you could have a slow-building heat of passion, but still you had to act suddenly on the heat of passion. So here, and essentially, it was brewing to the point that it did explode when he finally reached, you know, at that point. And in terms of... You're just a bit over your time. I'm finished. Yeah. Thank you. We appreciate your arguments on both sides. And the matter is submitted. So, yeah, Herbal Life International was continued. And that gets us to Leilani Gutierrez versus United States of America.
judges: Beezer, Paez, Campbell